## Case No. 9,527a.

### MICHIGAN CENT. R. CO. v. SLACK.

[22 Int. Rev. Rec. 337.]

Circuit Court, D. Massachusetts. May Term, 1876. [1]

INTERNAL REVENUE—ACT OF CONGRESS—CONSTITUTIONALITY—LAWS IMPAIRING OBLIGATION OF DEBTS.

1. Constitutionality of the internal revenue law of 1866 considered and affirmed.

2. The restriction upon the passage by the states of laws impairing the obligations of contracts not applicable to the federal government.

[3. Cited and disapproved in U. S. v. Erie R. Co., Case No. 15,056, in respect to the point that under the statute the interest payable by a corporation upon its bonds, is either the property of the corporation, and thus rightfully taxable, or the property of the bondholder, and thus taxable because in the shape of funds within the jurisdiction of the taxing power, the tax attaching to the interest, as funds of the bondholder in the hands of the corporation.]

This suit was brought August 16, 1871, in the state court, after appeal duly made to the commissioner of internal revenue, to recover the amount of an internal revenue tax of eight hundred and sixty dollars and thirty-three cents, paid to the defendant [Charles W. Slack] as collector of internal revenue for the Third Massachusetts internal revenue district, on the 28th February, 1870. It was duly removed to this court by certiorari, and was here heard upon agreed facts. The tax was assessed on or about the 19th day of February, 1870, on sterling bond interest paid by said company in London in gold, in the previous month of January, by cashing certain coupons which then fell due. The coupons taxed as aforesaid were attached to certain sterling bonds issued by said railroad company, to the amount of 95,700, and nego-

[1] [Affirmed in 100 U. S. 595.]

tiated by their agents in London in the year 1852, or early in 1853; many years before the passage of the first internal revenue law of the United States. These bonds were due in July, 1872, and were paid at maturity in gold in London. So far as the company knows, not one of these bonds was ever held by any person in the United States, or by other than non-resident aliens, and the interest accruing was regularly paid in gold in full in London, without rebate, or reservation of the United States internal revenue tax.

F. W. Palfrey, for plaintiff.
P. Cummings, Asst. U. S. Atty., for defendant.

The case was argued at the October term, 1875, of this court, before CLARK, District Judge, sitting as circuit judge. Judge Clark held the case under advisement until October 3, 1876, when he delivered the following opinion:

The case is well presented in the agreed statement of facts, and the sole question before the court is, whether congress had power to impose the tax. The statute of the United States provides: "That any railroad, canal, turnpike, canal navigation, or slack water company, indebted for any money for which bonds or other evidence of indebtedness have been issued, payable in one or more years after date, upon which interest is stipulated to be paid, or coupons representing the interest, or any such company that may have declared any dividend in scrip, or money due or payable to its stockholders, including non-residents, whether citizens or aliens, as part of the earnings, profits, income, or gains of such company carried to the account of any fund, or used for construction, shall be subject to and pay a tax of five per centum on the amount of all such interest or coupons, dividends or profits, whenever and wherever the same shall be payable, including non-residents, whether citizens or aliens, and said companies are hereby authorized to deduct and withhold from all payments on account of any interest, or coupons, or dividends due and payable as aforesaid, the tax of five per centum; and the payment of the amount of said tax so deducted from the interest or coupons, or dividends, and certified by the president or treasurer of said company, shall discharge said company from that amount of the dividend or interest, or coupon on the bonds or other evidence of their indebtedness so held by any person or party whatever, except where said company have contracted otherwise." 14 Stat. 138, 139. In considering this statute in the case of U. S. v. Railroad Co., 17 Wall. [84 U. S.] 322, the supreme court held that the tax imposed was upon the creditor and not upon the corporation; and the corporation is made use of as a convenient means of collecting the tax. But it is difficult to see how that decision can be made applicable in this case; because the corpora-

tion here paid the interest in full, for the reason as stated in the brief of the plaintiff that they had "otherwise contracted." If this be so, the case falls within the exception of the statute "except when said company have otherwise contracted," and the tax falls on the corporation and not on the bondholders. But whether the tax authorized and imposed be upon the corporation or upon the bondholders, who in this case appear to be foreigners, we think the tax can be supported. The language of the statute is broad enough and explicit enough for that purpose. The language is "any railroad" indebted by bonds stipulating for interest, "shall be subject to and pay a tax of five per centum on the amount of all such interest, whenever and wherever the same shall be payable, and to whatsoever party or person the same shall be payable, including non-residents, whether citizens or aliens," and may deduct the tax paid from the interest due the bondholder, "except when said companies have otherwise contracted." Speaking of this statute in Railroad Co. v. Jackson, 7 Wall. [74 U. S.] 269, Mr. Justice Nelson, who delivered the opinion of the court in that case, said "the question hereafter will be not whether the law embraced the alien non-resident holder, but whether it is competent for congress to impose it." Id. Could congress then impose this tax?

The constitution of the United States says (article 1; § 8) "the congress shall have power to lay and collect taxes, duties, imports, and excises, to pay the debts and provide for the common defence, and general welfare of the United States; but all duties, imports, and excises, shall be uniform throughout the United States," that "no capitation or other direct tax shall be laid unless in proportion to the census or enumeration hereinbefore directed to be taken," and that "no tax or duty shall be laid on articles exported from any state." These are the only express provisions in the constitution in regard to taxation, and they contain the only express restrictions upon congress on that subject. There is nothing further as to the persons to be taxed, nor as to the objects or manner of taxation. But it is very obvious, that taxation cannot extend beyond the jurisdiction of the taxing power; and that the objects of taxation must be within its territorial limits. So it was decided in Railroad Co. v. Pennsylvania, 15 Wall [82 U. S.] 300. In that case, it was held that "bonds issued by a railroad company are property in the hands of the holders, and when held by non-residents of the state, in which the company was incorporated, they are property beyond the jurisdiction of the state." But the decision in that case was upon a taxation by the state of Pennsylvania, under a statute of that state very different from the statute of the United States, now under consideration; and the decision was upon a ground, as the principal one, so entirely wanting in this case, that I

have not found that case a satisfactory guide in this; though some of the reasons there presented are of weight here. "Persons, property and business," it is said, "are proper subjects of taxation." "It may touch property in every shape, in its natural condition, in its manufactured form, and in its various transmutations." "It may touch business in its almost infinite forms, in which it is conducted, in professions, in commerce, in manufactures, and in transportation." "Unless restrained by the provisions of the federal constitution, the power of congress as to the mode, form, objects, and extent of taxation is unlimited." Railroad Co. v. Pennsylvania, 15 Wall. [82 U. S.] 319.

Now, applying these principles to the case under consideration, I think the tax must be sustained. The statute provides "that any railroad, canal, turnpike, canal navigation, or slack water company indebted for any money for which bonds or other evidence of indebtedness have been issued, payable in one or more years after date, upon which interest is stipulated to be paid, or coupons representing the interest, or any such company that may have declared any dividend in scrip or money due or payable to its stockholders, including non-residents, whether citizens or aliens, shall be subject to pay a tax of five per centum on the amount of all such interest, or coupons, dividend or profits, whenever and wherever the same shall be payable, including non-residents, whether citizens or aliens." Now when this interest became due and payable, whose property was it? If it was the railroad's, then the railroad was rightfully taxed for it. If it was not the railroad's, then it was the bondholders' and was equally the subject of taxation, as it was within the jurisdiction of the taxing power, and the tax could be collected out of the funds under its control. The tax attached to this interest, as soon as it became due in the hands of the railroad, and if, as the supreme court says, the railroad is only a convenient mode of collecting the tax, they are so because they have fun ls of the bondholders in their hands. The case is analogous to what is known in some of the states as the trustee process, by which the property rights or credits of one person are attached in the hands of another. As if A. owes B. a creditor of B. may attach a debt due by A. to B. in the hands of A. The same thing is done in other states by the process of garnishment.

There is another consideration of much force. Congress is the taxing power, at liberty to choose the objects of taxation, the methods and the amount, under the restrictions of the constitution. It may make its own laws for effectuating its purpose. In the internal revenue law of 1866, in the section just quoted, it has laid a tax on interest due from railroads on their bonds eo nomine; and in this case have collected it. If there were nothing to collect the tax out of, then the tax must fail. But in this case, they have

reached the fund, and have collected the tax, out of the interest, mentioned in the statute. What is there in the constitution of the United States to forbid this? and if there be nothing, what power has this court, or any other court to say it shall not be done? If it be said this interest is not the fund of the bondholder, then it must follow that the bondholder is not taxed, because the tax is laid upon the interest. "Shall be subject to and pay a tax of five per centum on the amount of all such interest," are the words of the statute.

In the case of Railroad Co. v. Pennsylvania, 15 Wall. [82 U. S.] 320, Mr. Justice Field said that bonds issued by the railroad in that case were property undoubtedly, but property in the hands of the holders, and not the property of the obligors. That is undoubtedly true, when you speak of the bonds as such; the bonds are the property of the owners, but the fund out of which they are to be paid is in the hands of the obligors, and it is precisely the interest accruing from this fund that congress has taxed in the hands of the obligors. The remark made by Justice Field, that this is not a legitimate exercise of the taxing power, must be held to apply to the case then before the court, which was a taxation by the state of Pennsylvania, which the court held impaired the obligation of a contract. But no such consideration arises here, and if a taxation by congress be within the limits of the federal constitution, no contract between persons, natural or artificial, or states and persons, can be set up to defeat it. States cannot pass laws impairing the obligation of contracts, but there is no such restriction in the federal constitution upon the congress as to the power of taxation. It is a question for their wisdom and discretion, and not a constitutional prohibition.

Objection is made that such a taxation was in violation of the constitutional provisions, that all taxation should be uniform throughout the United States, "and that private property shall not be taken for public uses without just compensation." and "that it was an attempt to tax subjects over which the sovereign power of the state did not extend." But it is difficult to see, and the court does not see any particular in which the tax is not uniform throughout the United States. It is laid upon all railroads indebted by bond, in the same amount, and collected in the same manner. The extent and operation are the same for all within the United States. If it operates indirectly otherwise upon the non-resident, it is a sufficient answer to say that he is without the constitutional limit of the taxation, and the tax cannot be defeated on that account. The tax must be uniform throughout the United States, not beyond them. The provision of the statute, that the payment of the tax should discharge the company from so much of the interest except where the companies have contracted otherwise extends to all railroads throughout the United States, and if any company has contracted otherwise, it is an undertaking of their own, with which congress wisely does not seek to interfere, but it cannot be set up to defeat the tax. That exception is uniform throughout the United States.

The objection that the tax takes private property for public use without just compensation is equally untenable. We do not think that provision of the constitution is applicable to taxation. "A tax," says Mr. Justice Hunt, in the case of U. S. v. Railroad Co., 17 Wall. [84 U. S.] 326, "is understood to be a charge, a pecuniary burden, for the support of the government." It might be laid by an oppressive or very badly administered government, and no benefit received from the payment of the tax by the taxpayer, and yet the tax might be legal. Taking property for public use is where the land or other property of an individual is taken from him, and for the use of the government, or public, and where if the property were not paid for, the burden would fall chiefly upon the person whose property is taken, and not upon the public generally. In such case payment must be made to prevent inequality. Nor is it sufficient to defeat this taxation to allege that it was an attempt to tax subjects over which the sovereign power of the state did not extend. If by the word "subjects" persons be meant, the answer is; that no attempt is made to tax persons; if by it property be meant, the answer is, that property found within the jurisdiction is a proper subject of taxation.

Judgment must be for the defendant.

[The case was taken, on a writ of error, to the supreme court, where the judgment of the court below was affirmed. 100 U. S. 595.]